IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**BENJAMIN CARTER,**

    **Plaintiff,**

v.                                                         Civil Action No. 3:24cv136

**KEVIN MCCOY,** *et al.,*

    **Defendant.**

## MEMORANDUM OPINION

Benjamin Carter, a former Virginia inmate proceeding *pro se*, and a frequent litigant in this Court, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on Carter's Complaint (ECF No. 1) and the Motion to Dismiss filed by Defendants Beth Cabell and Kevin McCoy ("Defendants"). (ECF No. 32.)[2] Defendants and the Court provided Carter with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF Nos. 34, 35.) Nevertheless, Carter filed no response to the Motion to Dismiss.[3] For the reasons stated below,

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] By Memorandum Opinion and Order entered on February 24, 2025, the Court dismissed Defendants Daugherty, Smith, Boone, and Cooley because Carter failed to serve them in a timely manner. (ECF Nos. 43, 44.) Defendant Green separately moves for summary judgment. (ECF No. 45.)

[3] The only submission from Carter was filed on April 17, 2025, and responds to the Court's dismissal of several Defendants on February 24, 2025, for lack of service. The Court will address that submission at the conclusion of the opinion.

the Motion to Dismiss (ECF No. 32) will be GRANTED. Carter's claims will be DISMISSED for failure to state a claim and as legally frivolous.

## I. Preliminary Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads

2

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Summary of Allegations and Claims

Pertinent here, in his Complaint, Carter names Kevin McCoy and Beth Cabell, who according to Carter were both "at all times mentioned" the Wardens of Sussex I State Prison ("Sussex"). (ECF No. 1, at 2–3.) Carter alleges as follows against these two Defendants:[4]

> 5.    On June 22, 2022, I was placed back at Sussex from [Sussex II], and upon immediately arriving back to Sussex, there was new leadership at Sussex, and McCoy immediately ordered that I be put in ambulatory restraints for no penological purpose per OP420.2 Use of Restraints at roughly 4:30 p.m. – 5:30 p.m. (legal duty).
> 6.    Once placed in the ambulatory restraints, McCoy failed to make sure the restraints were adequately applied per OP420.2 and medical personnel was never told I was being placed in these restraints per OP420.2 (breach of duty).

---

[4] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation and omits the emphasis, underlining, and citations to exhibits in the quotations from Carter's submissions. Carter refers to Sussex I State Prison as "SXI." The Court replaces that term with "Sussex" in the quotations from Carter's submissions.

3

7. Ambulatory restraints are [used] when a prisoner has committed acts that are disruptive to the orderly operations of a VDOC facility when used to be placed on a prisoner in the cell and when prisoners are on out of facility transports.

8. These restraints are handcuffing the prisoner to a metal waist chain w/ a metal black box put over the handcuffs that restrict the prisoner's arms to being attached to his pelvis area, and shackles are placed on the prisoner to restrict his ability to walk no more than a foot (12 inches) per step.

9. The restraints were applied excessively tight against OP420.2 and caused me to lose blood circulation in my ankles and wrist as the metal dug into my flesh causing me to bleed on my wrist and ankles for roughly 4 (four) hours (causation and physical injury).

10. At roughly 10p.m., Boone came to my cell (3A-06) and removed the restraints . . . .

. . . .

18. On July 8, 2022, McCoy and Cabell transferred me in retaliation to [Red Onion State Prison ("ROSP")] . . . outside of the court ordered 50 mile radius . . . (breach of duty).

19. I was then deprived of all of my belongings that morning and placed in ambulatory restraints and left in them for 7 (seven) hours all the way to ROSP, where I was released of the restraints, in severe pains in my wrist, back, and chest, limiting my range of motion in my hands (causation and physical injury) roughly 300 miles away.

20. . . . I was transferred back to Sussex on July 22, 2022, and had to undergo yet another [ride] in ambulatory restraints for 7 more hours back to Sussex and was subject to severe pains in my wrist, back, and chest, limiting my range of motion in my hands (causation and physical injury).

21. On September 14, 2022, still under Cabell's and McCoy's personal welfare, I woke up roughly at 7 a.m. and my cell was covered in sewage water approx[imately] a few inches in depth, due to Cabell's and McCoy's failure to fix the drainage system at Sussex per OP301.3 Preventative and Corrective Maintenance Prostheses. (legal duty and breach of duty).

22. I began gagging severely and vomited in my cell from the fumes of urine and feces . . . and submitted a[n] emergency grievance . . . to c/o Olkman and Smith stating I did, and that I was getting rashes on my skin (ankles and legs) and that my property was saturated in the sewage (causation and physical injuries).

23. At roughly 3:20 p.m., Smith inventoried my saturated property that was destroyed by the sewage water, that included my trial transcripts, personal letters and pictures, magazines and books, legal documents, which some were sentimental to me because . . . my letters and pictures were destroyed were of my deceased dad and great aunt, and the rest of the destroyed items total $2,696.34 in value (causation and injury).

24. Once Smith inventoried my destroyed belongings, he told the inmate worker to throw my belongings in the trash (deprivation of personal property) and I never received written notice, or any type of option to have my belongings replaced, even after I filed my grievance and was denied due process for the deprivation of property.

4

    25. I started experiencing severe depression spells missing the last physical items I had of my dad and great aunt, and my ankles were itching and burning for a few days after the sewage flood (injury), as well as delay in my legal cases.

(ECF No. 1, at 4–10.) Carter raises the following "Legal Claims" against Defendants (ECF No. 1, at 13):

Claim One: (a) "McCoy violated my First Amendment[5] right to the U.S.C. to be free from retaliation for using the grievance procedure when he transferred me against my court order on July 8, 2022." (ECF No. 1, at 14.)

(b) "McCoy is liable for the negligent act of violating my court order and caus[ing] me to be placed in ambulatory restraints on July 8th and 22nd of 2022, totaling roughly 15 hours, and I suffered severe, physical, unnecessary restraints, mental anguish, wrist, chest, and back pains." (ECF No. 1, at 14.)

(c) "McCoy is liable for the negligent act of violating OP420.2 Use of Restraints and caused me to have cuts on my wrist and ankles on June 22-23, 2022. (ECF No. 1, at 14.)

(d) "McCoy is liable for the negligent act of violating OP301.3 Preventative and Corrective Maintenance Prostheses causing the sewage backup and my loss of property on September 14, 2022, and rashes. (ECF No. 1, at 14.)

(e) "McCoy is liable for the deprivation of property that was destroyed at Sussex under his personal welfare by the sewage, w/o reimbursement or due process on September 14, 2022." (ECF No. 1, at 14.)

Claim Two: (a) "Cabell violated my First Amendment to the U.S.C. to be free from retaliation for using the grievance procedure when she transferred me against my court order on July 8, 2022." (ECF No. 1, at 16.)

(b) "Cabell is liable for the negligent acts of violating OP301.3 Preventative and Corrective Maintenance Prostheses causing the sewage backup and loss of my property on September 14, 2022, and rashes. (ECF No. 1, at 16.)

---

[5] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press, or the right of the people to peacefully to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

(c) "Cabell is liable for the deprivation of property that was destroyed at Sussex under her personal welfare by the sewage, w/o reimbursement or due process on September 14, 2022." (ECF No. 1, at 17.)

Carter asks for monetary relief, costs, attorneys fees, and any equitable relief the Court deems proper. (ECF No. 1, 17–19.)

### III. Analysis

#### A. Carter States No Retaliation Claim

In Claim One (a) and Claim Two (a), Carter contends that Defendants violated his First Amendment right "to be free from retaliation" by transferring him to Red Onion State Prison. However, Carter wholly fails to state a plausible claim for relief. Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)) (some internal quotation marks omitted). "[P]laintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal . . . ." *Adams*, 40 F.3d at 74. Instead, a plaintiff must allege facts suggesting "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Id.* at 75.

"To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendants' conduct." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (citations omitted) (internal quotation marks omitted). However, "bare assertions of retaliation do not establish a claim of constitutional dimension." *Adams*, 40 F.3d at 75. Here,

Carter's allegations of retaliation are nothing more than bare assertions. At most, Carter alleges that Defendants retaliated against him for "us[ing] the grievance process." (ECF No. 1, 14, 27.) The United States Court of Appeals for the Fourth Circuit has held that inmates engage in protected First Amendment activity when they write grievances and file lawsuits. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544–46 (4th Cir. 2017). However, Carter has not pointed to any specific grievance that would have been directed to Defendants and that Defendants could have reacted to by transferring him. Thus, Carter fails to satisfy the first factor, and for that reason alone his retaliation claims fail. Even so, Carter's claims similarly falter under the second and third factor. Carter fails to allege any facts that would plausibly suggest a retaliatory motive by Defendants or any connection between Carter's use of the grievance process and the purported retaliatory conduct of a transfer to a different institution. Accordingly, Carter's conclusory allegations of retaliation fail to state a claim upon which relief may be granted. *See Adams*, 40 F.3d at 75. Accordingly, Claim One (a) and Two (a) will be DISMISSED for failure to state a claim.

### B. Carter States No Fourteenth Amendment Due Process Claim

In Claim One (d) and Claim Two (c), Carter contends that Defendants are "liable for the deprivation of property that was destroyed at Sussex under [his/]her personal welfare by the sewage, w/o reimbursement or due process on September 14, 2022." (ECF No. 1, at 17; *see* ECF No. 14.) The Due Process Clause[6] applies when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify

---

[6] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

7

whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted).

Here, Carter faults Defendants for the destruction and taking of his personal property without compensation. However, the loss of Carter's personal property fails to implicate due process considerations because Virginia's provision of adequate post-deprivation remedies forecloses such a claim. *See Hudson v. Palmer*, 468 U.S. 517, 533, 534–35 (1984); *Wilson v. Agboola*, No. 3:22cv665 (DJN), 2023 WL 7545220, at *2 (E.D. Va. Dec. 13, 2023) (citations omitted). Under the Virginia Tort Claims Act, Virginia has waived sovereign immunity for damages for "negligent or wrongful" acts of state employees acting within the scope of their employment. Va. Code Ann. § 8.01-195.3. The United States Court of Appeals for the Fourth Circuit has held that the Virginia Torts Claim Act and Virginia tort law provide adequate post-deprivation remedies for torts committed by state employees. *See Wadhams v. Procunier*, 772 F.2d 75, 78 (4th Cir. 1985) (finding inmate's recovery in federal court for deprivation of liberty foreclosed, because "Virginia provides adequate tort remedies for post-deprivation compensation"). Because the availability of tort action in state court fully satisfies the requirements of a meaningful post-deprivation process, Carter cannot state a claim for the loss of his personal property under the Fourteenth Amendment. *See Jordan v. Rodriguez*, No. 3:11CV193, 2013 WL 4759247, at *2–3 (E.D. Va. Sept. 4, 2023); *Henderson*, 2008 WL 204480, at *10 n.7. Accordingly, Claim One (d) and Two (c), are DISMISSED for failure to state a claim.

C. **State Law Negligence Claims**

In Claims One (b), (c), and (e), and Claim Two (b), Carter contends that Defendants were negligent regarding the use of restraints to transport Carter and regarding his cell flooding.

8

Carter's claims are again too conclusory to state a claim for relief. In Claims One (b) and (c), at most, Carter contends that Defendant McCoy ordered that Carter be placed in restraints. (ECF No. 1, at 4–5.) Carter fails to allege facts that would plausibly suggest that Defendant McCoy was the person who placed the restraints on Carter or that Defendant McCoy was aware that these restraints were "excessively tight." (ECF No. 1, at 4–5.) At best, Carter allegations amount to a claim that Defendant McCoy negligently supervised those individuals who restrained and transported Carter. However, Virginia courts do not recognize a claim of negligent supervision. *Brown v. Wal-Mart Stores East, LP*, No. 3-23-cv-530 (SLS), 2023 WL 8357970, at *3–4 (E.D. Va. Dec. 1, 2023) (citations omitted). Similarly, this Court refuses to recognize an independent cause of action for negligent supervision when no authority exists for such an action under Virginia law. *See id.* Accordingly, Claim One (b) and (c) will be DISMISSED for failure to state a claim.

Similarly, in Claim One (e) and Claim Two (b), Carter fails to plausibly suggest that Defendants were personally responsible for his cell flooding. "The essential elements of a negligence claim in Virginia, as elsewhere, are (1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach." *Talley v. Danek Medical, Inc.*, 179 F.3d 154, 157 (4th Cir. 1999) (citation omitted). To avoid being found negligent, that standard of conduct "is that of a reasonable man [or woman] under like circumstances." *Id.* at 158 (citation omitted). Besides his conclusory statements that Defendants failed to keep the drainage system in good order, Carter fails to allege that Defendant breached any legal duty to Carter. This is entirely fatal to his claim. Carter fails to plausibly allege that Defendants were negligent with respect to the flooding

in his cell. Accordingly Claim One (e) and Claim Two (b) will be DISMISSED for failure to state a claim.

Second, and in the alternative, Defendants correctly assert that sovereign immunity bars Carter's claims of negligence.[7] Indeed, "[t]he doctrine of sovereign immunity protects the state from liability for claims of negligence asserted against it." *Coppage v. Mann*, 906 F. Supp. 1025, 1047 (E.D. Va. 1995). "Because a state acts through its employees, the sovereign immunity doctrine extends to public employees as well." *Id.* Thus, in Virginia, individuals that work for an immune government entity, such as a state agency like the VDOC, "may invoke the Commonwealth's sovereign immunity with respect to claims of simple negligence so long as the challenged conduct consisted of 'acts of judgment and discretion which are necessary to the performance of [essential] governmental function[s].'" *Riddick v. Watson*, 503 F. Supp. 3d 399, 426 (E.D. Va. 2020) (alterations in original) (quoting *Heider v. Clemons*, 400 S.E.2d 190, 191

---

[7] Virginia recognizes three degrees of negligence: (1) simple or ordinary negligence; (2) gross negligence; and, (3) willful or wanton negligence. *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004). Based on the evidence presented, the finder of fact determines the appropriate level of negligence after the parties have conducted discovery, on a motion for summary judgment, or during trial. *Wilby v. Gostel*, 578 S.E.2d 796, 800–01 (Va. 2004). Only when "reasonable minds could not differ," should these issues be decided by the Court. *Poliquin v. Daniels*, 486 S.E.2d 530, 534 (Va. 1997) (citation omitted). Carter does not allege any facts that would plausibly suggest that Defendants were grossly or willfully and wantonly negligent. Gross negligence is "action which shows indifference to others, disregarding prudence to the level that the safety of other is completely neglected. [Such] negligence . . . shocks fair minded people . . . ." *Harris v. Harman*, 486 S.E.2d 99, 101 (Va. 1997) (citing *Griffin v. Shively*, 315 S.E.2d 210, 212–13 (Va. 1984)). Willful and wanton negligence is "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id.* (quoting *Griffin*, 315 S.E.2d at 213). Willful and wanton negligence "generally involves some type of egregious conduct—conduct going beyond what shocks fair-minded people." *Id.* at 102. To the extent that Defendants had any personal involvement in his restraints being too tight, or his cell flooding, this conduct would neither shock fair-minded people nor involves egregious conduct. Thus, the Court construes Carter, at best, to allege a claim of ordinary negligence.

(Va. 1991)). Although, under the Virginia Tort Claims Act, the Commonwealth has "waived its immunity from negligence suits against the Commonwealth itself, it has explicitly retained 'the individual immunity of . . . public officers, their agents and employees from tort claims for damages . . . .'" *Coppage*, 906 F. Supp. at 1047 (quoting Va. Code Ann. § 8.01-195.3).

The Supreme Court of Virginia has set out a four-factor "test to determine entitlement to immunity." *Messina v. Burden*, 321 S.E.2d 657, 663 (Va. 1984). Accordingly, a court must consider: (1) "the nature of the function performed by the employee," (2) "the extent of the state's interest and involvement in the function," (3) "the degree of control and direction exercised by the state over the employee," and (4) "whether the act complained of involved the use of judgment and discretion." *Id.* (citation omitted)). Here, the applicability of sovereign immunity, "as is often the case, turns on the fourth factor — whether the challenged acts involved the use of judgment and discretion." *Riddick*, 503 F. Supp. 3d at 426; *see, e.g., Dowdy v. Pamunkey Regional Jail Auth.*, No. 3:14–cv–003–JAG, 2014 WL 2002227, at *4 (E.D. Va. May 15, 2014) (noting that "whether the employee's actions 'involved judgment and discretion'" is "typically dispositive").

Here, the first three factors favor a finding of immunity for Defendants. The function performed by Defendants, supervising and managing inmates like Carter, "falls cleanly within the governmental function of housing and properly operating [prisons]." *Myrick v. NaphCare, Inc.*, No. 3:16–cv–000952–JAG, 2017 WL 3234384, at *2 (E.D. Va. July 31, 2017). With respect to the second and third factor, Virginia has a strong interest and involvement in the administration of its prisons, and a great interest in and control over this function. *See id.* With respect to the fourth factor, it is doubtful based on Carter's allegations – even read favorably - that Defendants had any involvement in the use of restraints on Carter during transport or at any

11

other time or were liable in any way for Carter's cell flooding. Nevertheless, to the extent that they were involved somehow, Defendants actions, "involved the use of judgment and discretion," which support a finding of immunity. Thus, Defendants satisfy all four factors and are entitled to sovereign immunity for the negligence claims.

Accordingly, even if Carter had sufficiently stated a claim of ordinary negligence, which he has not, sovereign immunity protects Defendants from these claims. *Cf. id.* at *2–3 (finding officers protected by sovereign immunity for negligence claim where they ignored a doctor's order or emergency transport, because they "exercised discretion and judgment in determining how to appropriately handle [the inmate's] medical situation"). Claims One (b), (c), and (e), and Claim Two (b) will be DISMISSED for failure to state a claim.

## IV. Outstanding Reconsideration Request

By Memorandum Opinion and Order entered on February 24, 2025, the Court dismissed Defendants Daugherty, Smith, Boone, and Cooley because Carter failed to serve them in a timely manner. (ECF Nos. 43, 44.) In Carter's "Rebuttal to ECF No. 44- Reconsideration of Dismissed Defendants" (ECF No. 51), Carter asks the Court to re-order the Marshal to serve Defendants Smith, Boone, and Daugherty ("Dismissed Defendants").[8] Carter seemingly suggests that because he was granted *in forma pauperis* status, and because he was previously incarcerated, he is relieved of the duty to find addresses for the Dismissed Defendants and insists that he should be provided with the addresses that were submitted under seal. (*See* ECF No. 51, at 1–2.) Because Carter's request seeks reconsideration of an order before the entry of final judgment, the motion is governed by Rule 54(b). Accordingly, Carter's request will be construed as a motion

---

[8] Carter fails to identify a procedural vehicle that authorizes the action he seeks here. Nevertheless, a discussed above, Carter has not identified any persuasive reason to vacate Court's February 24, 2025 Memorandum Opinion.

12

under Federal Rule of Civil Procedure 54(b) ("Rule 54(b) Motion," ECF No. 51.) That rule provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). A district court retains the discretion to reconsider or modify a grant of a partially dispositive motion at any time prior to the entry of final judgment. *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991); Fed. R. Civ. P. 54(b)). Nevertheless, a court must exercise its discretion to consider such motions sparingly in order to avoid an unending motions practice. *See Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001). Under Rule 54(b), a motion for reconsideration generally should be limited to instances such as the following:

> [T]he Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . . [or] a controlling or significant change in the law or facts since the submission of the issue to the Court [has occurred]. Such problems rarely arise and the motion to reconsider should be equally rare.

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983); *accord United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 977 (E.D. Va. 1997). The Fourth Circuit has indicated that reconsideration is also appropriate where "a subsequent trial produces substantially different evidence" or "the prior decision was clearly erroneous and would work manifest injustice." *Am. Canoe Ass'n*, 326 F.3d at 515 (quoting *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)). The courts do not entertain motions to reconsider which ask

the Court to, "rethink what the Court had already thought through--rightly or wrongly." *Above the Belt, Inc.*, 99 F.R.D. at 101.

Carter does not explicitly address any of the above recognized grounds for relief in his Rule 54(b) Motion. However, Carter clearly is not entitled to relief. Here, the Court attempted to serve the Dismissed Defendants through the Attorney General's Office. The Attorney General was unable to accept service on their behalf. The Assistant Attorney General provided last known addresses under seal for Defendants Daugherty, Smith, Boone, and Cooley and the Court ordered the Marshal to attempt service on these Defendants at the addresses provided. All four summons were returned unexecuted. Therefore, the Court already ordered the Marshal to serve the Dismissed Defendants at the only addresses available and service was unsuccessful. Carter has supplied no updated address where these Dismissed Defendants could be served. *See Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993) (holding that prisoners proceeding *in forma pauperis* retain responsibility for providing address at which service can be effectuated). Carter has identified no valid reason to vacate the February 24, 2025 Memorandum Opinion and Order. Accordingly, Carter's Rule 54(b) Motion (ECF No. 51) will be DENIED.

### V. Conclusion

The Motion to Dismiss (ECF No. 32) will be GRANTED. Claims One (a)–(e) and Claim Two (a)–(c) will be DISMISSED for failure to state a claim and as legally frivolous. The Rule 54(b) Motion (ECF No. 51) will be DENIED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 07/07/2025
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge