IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**BENJAMIN CARTER,**

    **Plaintiff,**

**v.**                                                                             Civil Action No. 3:24cv136

**KEVIN MCCOY,** *et al.***,**

    **Defendant.**

## MEMORANDUM OPINION

Benjamin Carter, a former Virginia inmate proceeding *pro se*, and a frequent litigant in this Court, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on Carter's Complaint (ECF No. 1) and the Motion for Summary Judgment filed by Defendant Trenton Green, the sole remaining defendant. (ECF No. 45.)[2] The Court provided Carter with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF No. 47.) Nevertheless,

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] By Memorandum Opinion and Order entered on February 24, 2025, the Court dismissed Defendants Daugherty, Smith, Boone, and Cooley because Carter failed to effect timely service on these Defendants. (ECF Nos. 43, 44.) By Memorandum Opinion and Order entered July 7, 2025, the Court granted the Motion to Dismiss filed by Defendants McCoy and Cabell and dismissed any claim against them for failure to state a claim and as legally frivolous. (ECF No. 54.)

Carter has misspelled Defendant Green's name. The Court corrects the spelling of his name in this opinion.

Carter filed no response to the Motion for Summary Judgment.[3] For the reasons stated below, the Motion for Summary Judgment will be GRANTED.

## I. Summary of Allegations and Claims

In his Complaint, Carter contends that Defendant Green, a lieutenant at Sussex I State Prison ("Sussex") handcuffed him improperly. (ECF No. 1, at 2.)[4] Carter alleges as follows:

> 26. On December 30, 2022, I had requested to take my shower as everyone else did in my [housing unit ("HU")] when Smith and Green came to escort me to the shower.
> 27. Upon Green and Smith's arrival, they told me I had to be handcuffed to the rear despite my medical treatment orders for my left . . . rotator cuff to staff not to rear cuff me until my shoulder was healed, which this treatment order had been documented, and staff, including Green and Smith, were aware of, but knowingly disregarded and forced me into handcuffs behind my back.
> 28. My [left] should immediately began burning and I tried to get to the shower w/o conflict w/ Green and Smith when Green, gripping my [left] arm, yanked my arm and I collapsed from the shock of pain that my [left] shoulder gave like a needle and was being stuck in my muscle, on the floor.
> 29. Green then began pulling my [left] arm as I was on the floor yelling in pain every time he pulled my arm and w/o penological reason, Smit yank[ed] the shackles around my ankles excessively in the air swinging them left and right laughing as I sighed in pain from the shackles' resistance on my ankles. Then Smith dropped my legs onto the floor after he assaulted me, saying, "write that upon me like you did before." (adverse action).
> 30. I was taken to the medical station and assessed, where the nurse then showed the [Sussex] supervisors my treatment order again not to rear cuff me, dating back to April 14, 2022, and again on December 29, 2022, as she and [Sussex] staff had told HU-3 staff, including Green and Smith, since June of 2022, when I was placed back in HU-3.
> 31. My [left] shoulder was extremely sore for roughly 2 days and my ankles were sore for roughly a week, while my range of motion to walk and use my [left] arm were limited.

(ECF No. 1, at 10–11.)

---

[3] The only submission from Carter was filed on April 17, 2025, and responds to the Court's dismissal of several Defendants on February 24, 2025 for lack of service. The Court denied Carter's request to re-issue service in the July 7, 2025 Memorandum Opinion and Order.

[4] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation and omits the emphasis, underlining, and citations to exhibits in the quotations from Carter's submissions.

Based on the foregoing allegations, Carter raises the following "Legal Claims" against Defendant Green (ECF No. 12, at 13):

Claim One: "Green violated my Eighth Amendment[5] to the U.S.C. by being deliberately indifferent to my serious medical treatment to not be rear cuffed on December 30, 2022, w/ knowing[] disregard." (ECF No. 1, at 16.)

Claim Two: "Greene is liable for the negligent acts of violating my medical treatment order and caused me to be in days of pain in my [left] shoulder and suffer physical injury, mental anguish, on December 30, 2022." (ECF No. 1, at 16.)

Carter asks for monetary damages, costs and fees, and any equitable relief the Court deems appropriate. (ECF No. 1, at 17–19.)

Defendant Green argues that Carter failed to exhaust his administrative remedies with respect to these claims.

## II. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and

---

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Similarly, "conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993)). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Defendant Green asks the Court to dismiss the claims against him because Carter failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendant Green bears the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of his Motion for Summary Judgment, Defendant Green submitted: (1) the affidavit of Z. Dunson, the Ombudsman for Sussex (ECF No. 46-1, at 1–6); (2) a copy of Operating

Procedure 866.1, Offender Grievance Procedure ("Operating Procedure § 866.1," ECF No. 46-1, at 7–23); (3) and, a log of all grievance material that Carter submitted between December 30, 2022, and February 18, 2023. (ECF No. 46-1, at 24–29.)

At this stage, the Court is tasked with assessing whether Carter "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Carter filed no response to the Motion for Summary Judgment. However, Carter submitted a sworn Complaint containing the information that the Court recited above.

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Carter.

### III. Undisputed Facts Related to Exhaustion

#### A. Grievance Procedure at the Virginia Department of Corrections

Operating Procedure § 866.1 requires that, before submitting a Regular Grievance, the inmate must demonstrate that he or she attempted to resolve the issue through the informal complaint process. *See* Operating Procedure at § 866.1.I.D.1–4. "The first step in in the informal complaint process is for the offender to discuss their issue with staff for a quick resolution." *Id.* at § 866.1.I.D.1. If the issue is not resolved verbally, the offender should submit a *Written Complaint. Id.* at § 866.1.I.D.2. Prison staff have fifteen days from receipt of the *Written Complaint* to provide an appropriate written response. *Id.* at § 866.1.II.B.4. "If the issue on the *Written Complaint* is not resolved to the satisfaction of the offender, or staff fail to provide a written response within 15 days, the offender may file a *Regular Grievance* .... The

5

*Regular Grievance* must be placed in the Grievance Mailbox within 30 days of the original incident unless a more restrictive timeframe applies." *Id.* at § 866.1.I.D.4

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. *Id.* at § 866.1.III.C.3&4. "If the *Regular Grievance* does not meet the intake criteria, staff has two working days from receipt to complete the *Intake* section of the <u>*Regular Grievance*</u> [form], indicating the reason for rejection, and to return the *Regular Grievance* to the offender." *Id.* at § 866.1.III.C.4. "If the offender disagrees with the intake decision, the offender has five days to appeal the decision." *Id.* at § 866.1.III.C.5.

### 2. Grievance Review

If the grievance is accepted, within two working days, prison "staff must print and provide the *Grievance Receipt* to the offender as notification of acceptance." *Id.* at § 866.1.III.C.3. Once the grievance is accepted for review, the Institutional Ombudsman determines the proper course of investigation. *Id.* at § 866.1.III.D.1. "Within 30 days of issuance of the *Grievance Receipt*, each accepted grievance must be investigated, reviewed, completed, and the *Offender Grievance Response – Level I* returned to the offender unless a continuance is authorized." *Id.* at § 866.1.III.F.2.(b).

### 3. Grievance Appeals

"The *Offender Grievance Response – Level I* includes a section for the offender to appeal their grievance response." *Id.* at § 866.1.IV.A. The appeal must be submitted within five days of receipt of the *Offender Grievance Response. Id.* at § 866.1.IV.B.2. Depending on the issue in the grievance, the appeal is addressed by the Director of Offender Management Services, the

6

Health Services Director, the Superintendent for Education, the Chief of Corrections Operations, or the Regional Administrator. *See id.* at § 866.1.IV.C.1.a–e. For most issues, the Level II appeal is the final level of review. (ECF No. 21-7, at 3.)

"The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed without satisfactory resolution." *Id.* at § 866.1.V.B.

### B. Carter's Grievance Materials

Z. Dunson avers that she reviewed Carter's Grievance File and Carter failed to file any grievance materials with respect to the incident with Defendant Green on December 30, 2022. (ECF No. 46-1, at 4–5.) Z. Dunson also avers that it is Sussex's practice to retain copies of all submitted, but rejected, grievance materials. (ECF No. 46-1, at 5.) Carter's Grievance File also contains no rejected Written Complaints or Regular Grievances submitted by Carter. (ECF No. 46–1, at 5.)

### IV. Exhaustion Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that

7

"[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).[6]

Carter filed no grievance material pertaining to his claims about the December 30, 2022 incident with Defendant Green. Carter vaguely suggests that he "exhausted all administrative remedies for all claims mentioned, some being unavailable to me by the prison not giving me complaints, or processing the complaints, I sent in others being rejected for timing delays." (ECF No. 1, at 13.) Carter also contends that "grievance materials were unavailable on some matters, available on others." (ECF No. 1, at 13.) Carter's statements are too vague and conclusory to show that he exhausted his remedies, or attempted to exhaust his administrative remedies,[7] with respect to the December 30, 2022 claims against Defendant Green. *Wai Man Tom v. Hospitality Ventures, LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (requiring "nonmoving party [to] demonstrate specific, material facts exist that give rise to a genuine issue" and explaining that "conclusory allegations . . . , without more, are insufficient to preclude granting [a] summary judgment motion") (citing *Strickler v. Waters*, 989 F.2d 375, 1383 (4th Cir. 1993));

---

[6] Carter was an inmate at the time he filed this action. Therefore, he was required to exhaust his administrative remedies.

[7] The Court recognizes that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). Simply put, Carter has not sufficiently shown that he was prevented from utilizing the grievance process with respect to his claims against Defendant Green.

8

*see United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (concluding that "[a]iry generalities [and] conclusory assertions . . . [do] not suffice to stave off summary judgment . . . ." (citation omitted) (internal quotation marks)). Carter failed to exhaust his administrative remedies for Claims One and Two against Defendant Green. Accordingly, Claims One and Two will be DISMISSED WITH PREJUDICE.[8]

### V. Conclusion

The Motion for Summary Judgment (ECF No. 46) will be GRANTED. Claims One and Two will be DISMISSED. The action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 07/07/2025  
Richmond, Virginia

/s/  
M. Hannah Lauck  
United States District Judge

---

[8] Although the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice, *see, e.g., Booth*, 532 U.S. at 735, dismissal with prejudice may be appropriate "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004); *see Van Houten v. Marlett*, 330 F. App'x 161, 162–63 (10th Cir. 2009). That is the case here because the thirty-day time limit for filing any relevant grievance has long since expired. Consequently, Carter's claims against Defendant Green will be dismissed with prejudice.

9